**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:19-cr-00098-TMR-5 |
| | : | |
| v. | : | |
| | : | Judge Thomas M. Rose |
| JAMES RALPH JACKSON, III, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE (DOC. NO. 217)**

---

This case is before the Court on the Motion for Compassionate Release (Doc. No. 217) (the "Motion"), filed by James Ralph Jackson, III ("Jackson"). Jackson is currently incarcerated at McDowell FCI [Federal Correctional Institution] in West Virginia. He asks the Court for compassionate release from his term of imprisonment. More specifically, he asks that this Court grant him "compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i)." (Doc. No. 217 at PageID 844.) For the reasons discussed below, the Court **DENIES** Jackson's Motion.

## I. BACKGROUND

On May 30, 2019, the United States of America (the "Government") filed an 11-count Indictment in this case, with two of the counts brought against Jackson and the remaining counts brought against four other individuals. (Doc. No. 7.) On or about November 14, 2019, pursuant to a plea agreement, Jackson pleaded guilty to Count 1 of the Indictment, which charged him with conspiracy to interfere with commerce by threats or violence (Hobbs Act), in violation of 18 U.S.C. § 1951(a)(1), and aiding and abetting, in violation of 18 U.S.C. § 2. (Doc. No. 68.) The Statement of Facts attached to the Plea Agreement, signed by Jackson and his attorney, states:

1

> Beginning on a date unknown, but at least by on or about August 21, 2016 and continuing until on or about January 13, 2019 in the Southern District of Ohio, the defendant **JAMES RALPH JACKSON, III** together with at least one other person, both known and unknown to the Grand Jury, knowingly and intentionally agreed and conspired to unlawfully delay, obstruct and affect, interstate commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in interstate commerce by committing armed robberies to wit: home invasions of Dayton, Ohio area drug dealers. As a party and member of this agreement, the defendant voluntarily joined this conspiracy knowing that its objective was to commit armed home invasions/robberies and carjackings of drug dealers in order to wrongfully take and steal from their illicit drug inventories and criminal proceeds generated from the illicit drug sales. The personal property sought by and obtained by the conspirators from their victims without their permission and consent included: various illicit controlled substances, U.S. currency, jewelry, clothing, shoes, firms [sic] and motor vehicles. The conspirators wrongfully obtained aforesaid personal property from the various victims through the wrongful use of actual and threatened force, violence and fear of injury both immediate and future. The defendant **JAMES RALPH JACKSON, III** intended to join this conspiracy together with at least one other person to achieve these objectives, thereby sharing a unity of purpose and intent to commit home invasions/armed robberies and carjackings. During the existence of the conspiracy, at least one of the conspirators performed at least one of the overt acts listed in the Indictment while in the Southern District of Ohio in order to further the conspiracy's objective. Representative overt acts completed by one or more of the conspirators included:
>
> a. On or about January 13, 2019, the co-conspirators Dreshaun Alexander Thomas and Kieran Chandre Furness, drove a Dodge Ram pickup truck to a residence located at 4478 Gatewood Place, Trotwood, Ohio;
>
> b. Upon arriving at said location, said co-conspirators, forced entry into said residence;
>
> c. While inside said residence, said co-conspirators forcibly removed an individual made known to the Grand Jury as "J.B." from the premises at gun point; and
>
> d. After removing "J.B." from said residence, said co-conspirators proceeded to carjack "J.B.'s" 2018 Mazda CX-9.

(Doc. No. 68 at PageID 196.)

The Final Presentence Investigation Report ("PSI") regarding Jackson provided additional information about the circumstances of the offense, and it identified approximately thirteen prior adult criminal convictions and numerous other minor convictions. (PSI ¶¶ 94–117.) Jackson's

2

extensive criminal history, spanning nearly two decades, included convictions for receiving stolen property in 1999 (and again in 2001), reckless operation in 2001, burglary in 2002, two counts of disorderly conduct in 2003, vehicular assault in 2003, theft in 2007, four counts of identity fraud in 2012, aiding and abetting fraud in 2012, possession of marijuana in 2013, and fraud in 2016. (*Id.*) Additionally, the PSI stated that Jackson had previously violated probation and, more recently, committed an offense (fraud) while on supervision for which he was subsequently convicted. (*Id.* ¶¶ 96, 104–06.) However, the PSI also indicated that Jackson had successfully completed home confinement in the past and that he complied with community service requirements. (*Id.* ¶¶ 94–109.) Further, the PSI stated that Jackson accepted responsibility and showed remorse for his actions with respect to the offense he pleaded guilty to in this case. (*Id.* ¶ 43.)

At sentencing, the Court imposed a 60-month term of incarceration, three years of supervised release with special conditions, a $100 special assessment, and restitution in the amount of $18,717 (joint and several with his co-defendants). (Doc. No. 208.) Jackson is currently 42 years old and has an anticipated release date of September 9, 2025. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited March 29, 2023).)

Jackson filed several documents in support of the Motion. (Doc. No. 217.) The Government filed a Response to the Motion (Doc. No. 218) (the "Response"), in which the Government opposes the relief sought in the Motion. No reply was filed in support of the Motion, and the time to do so has now passed (*see* 01/18/2023 Notation Order). The matter is ripe for review and decision.[1]

---

[1] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18

3

## II.     ANALYSIS

### A. Legal Standards

Section 3582(c)(1)(A), colloquially known as the "compassionate release" statute, grants authority, in certain limited circumstances, to modify a term of imprisonment after it has been imposed. It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[2]

Therefore, a court may reduce a defendant's previously imposed term of imprisonment if it finds that three requirements are met: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the § 3553(a) factors, to the extent that they are applicable, support the reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021). On the other hand, a court may deny a compassionate release motion when any of the three substantive requirements is lacking and need not address the others.[3] *United*

---

U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) ("defendants now may bring reduction-of-sentence motions on their own once they exhaust any administrative remedies or wait 30 days from the date they request relief from the Bureau of Prisons"). Here, Jackson initially sent a request to the Warden of McDowell FCI asking that compassionate release be sought on his behalf. (Doc. No. 217 at PageID 845; Doc. No. 217-1 at PageID 857.) The Court acknowledges that more than 30 days passed between the Warden's receipt of Jackson's request and Jackson filing the Motion. (Doc. No. 217-1 at PageID 857.) Thus, the Court proceeds with the understanding that Jackson could move for compassionate release on his own behalf.

[2] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.

[3] However, courts currently omit the second requirement when an incarcerated person, as opposed to the Bureau of Prisons ("BOP"), files a motion seeking a sentence reduction. *United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021). The Sixth Circuit has explained that, "where incarcerated persons file motions for compassionate release,

*States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Moreover, while a court may reduce the term of imprisonment if all three requirements are met, it "need not do so." *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory").

Regarding the third requirement, "§ 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (internal quotation marks omitted and alterations adopted). The factors set forth in Section 3553(a) consider such things as the nature of the offense, the circumstances of the offense, the history of the defendant, the characteristics of the defendant, "and various penological goals, such as the need to promote respect for law and to protect the public," as well as to reflect the seriousness of the offense, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020); *see also* 18 U.S.C. § 3553(a). Among the variety of items that courts specifically have considered in the context of motions for compassionate release are the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, the defendant's background, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the

---

federal judges may skip step two of the § 3582(c)(1)(A) inquiry"—at least until the Sentencing Commission updates § 1B1.13 of the United States Sentencing Commission Guidelines Manual to reflect the First Step Act. *United States v. Jones*, 980 F.3d 1098, 1009-1111 (6th Cir. 2020) (explaining that passage of the First Step Act rendered § 1B1.13 inapplicable to cases where an imprisoned person files a motion for compassionate release).

5

sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, sentencing disparities between defendants (nationally and also among co-defendants) with similar records who are convicted of similar conduct, conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions. *Jones*, 980 F.3d at 1115; *Ruffin*, 978 F.3d at 1008-09. Of course, not all of these items will be applicable (or known to the court) in all cases, and other items may be applicable. *Id.*; 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable"); *see also United States v. Wright*, 991 F.3d 717, 719 (6th Cir. 2021) ("[d]istrict courts may place great weight on one sentencing factor when that weight is warranted") (internal quotation marks omitted).

B. <u>Application</u>

Jackson asks that the Court grant the Motion and "convert the remainder of his sentence to supervised release and grant immediate release." (Doc. No. 217 at PageID 853.) Jackson argues that relief should be granted because "he has medical conditions that leave him susceptible to extreme illness and/or death from COVID-19 if he becomes infected." (*Id.* at PageID 846.) More specifically, he asserts that his high blood pressure, severe obesity, age, race, and status as a former smoker all contribute to "an increased risk of severe illness from COVID-19." (*Id.* at PageID 846–47.) Jackson also argues that "an extraordinary and compelling cause for relief" exists due to his alleged "inability to take future [COVID-19] vaccinations based on the adverse reactions from [his

6

first COVID-19] vaccine." (*Id.* at PageID 848.) Jackson further asserts that his family circumstances (specifically, the death of the mother of two of his children, both of whom are at least twelve years old) and the "unexpected rigors of incarceration during the pandemic" support his requested relief. (*Id.* at PageID 850.) Among other things, Jackson states that he has not had any disciplinary reports since he began his incarceration, he has completed all available educational programs, he has his family's support, and he was the "least culpable" of all the co-defendants because he was "not involved in the actual robbery." (*Id.* at PageID 851–52.)

In response, the Government argues that the Court should deny the Motion because Jackson has not demonstrated that he is eligible for release under § 3582(c)(1)(A) and USSG § 1B1.13. (*See* Doc. No. 218.) Additionally, the Government asserts that the Bureau of Prisons ("BOP") has taken significant measures to protect inmates during the COVID-19 pandemic. (*Id.*) The Government also states that this Court lacks authority to grant Jackson's request for "supervised release," and it argues that the 3553(a) factors weigh in favor of Jackson's continued incarceration. (*Id.*)

    1. <u>Preliminary matters</u>

The Court must address a few preliminary issues. First, Jackson's request that the Court convert the rest of his sentence to supervised release amounts to asking the Court to change the place where his sentence will be served (from McDowell FCI to his home), without reducing the term of his sentence. However, it is the BOP, not the courts, that has the authority to determine the place of a defendant's confinement. The CARES Act did not change this fact. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment …"); CARES Act, Pub. L. No. 116-136, at Div. B., Title II, § 120003(b)(2); *United States v. Brummett*, No. 20-5626, 2020 U.S. App. LEXIS 26427, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) ("to the extent that [the defendant prisoner] sought relief under the CARES Act, the district court

7

correctly held that the authority to grant home confinement remains solely with the Attorney General and the BOP"). Therefore, the request is denied. However, even if the Court construed his request as asking for a reduction of the term of his sentence to time-served and imposing a term of supervised release equal to the current amount of unserved time, the Court still would deny the Motion for the reasons explained below. *See United States v Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020) ("Section 3582(c)(1)(A) does not authorize the district court to order that a defendant serve his current sentence in home confinement," but, if the court "reduces a defendant's sentence under § 3582(c)(1)(A) to time served, [then] it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home").

Second, to the extent that Jackson is arguing that his Motion should be granted due to the Eighth Amendment's prohibition on the infliction of cruel and unusual punishments (*see* Doc. No. 217 at PageID 849), a compassionate release motion is not the appropriate mechanism or vehicle to raise such a claim of alleged constitutional violations. *See, e.g.*, *United States v. Pooler*, No. 3:18-cr-00137, 2020 WL 7046964, at *7, 2020 U.S. Dist. LEXIS 224934, at *15–17 (S.D. Ohio Dec. 1, 2020); *United States v. Smith*, No. 3:17-cr-00025-TMR-1, 2020 WL 6702173, at *6 n.8, 2020 U.S. Dist. LEXIS 213050, at *13 n.8 (S.D. Ohio Nov. 13, 2020); *United States v. Duncan*, No. CR 7:17-01-KKC, 2020 WL 6196254, at *3, 2020 U.S. Dist. LEXIS 196540, at *7 (E.D. Ky. Oct. 22, 2020) (explaining that, to the extent a prisoner is asserting an Eighth Amendment claim as a way to seek release from prison, "[s]uch a claim is properly brought as a claim for habeas relief under 28 U.S.C. § 2241").

Third, Jackson's Motion was submitted as an unsigned and undated request. (Doc. No. 217 at PageID 854.) Additionally, some information in the Motion was left blank, such as dates

and Jackson's current weight. (*Id.* at PageID 845, 847.) Regardless, the Court will proceed with its analysis of the three requirements for compassionate release.

2. <u>Compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)</u>

Regarding the first requirement under 18 U.S.C. § 3582(c)(1)(A)(i), the Court denies Jackson's Motion because he failed to provide medical records or other evidentiary support for his asserted medical ailments and family circumstances. *United States v. Green*, No. 3:17-CR-00189, 2021 U.S. Dist. LEXIS 49871, 2021 WL 1020412, at *6 (S.D. Ohio Mar. 17, 2021) ("[a] district court may deny a motion for compassionate release if the movant fails to provide any records in the motion to support his or her claimed medical ailment(s) that form the basis for arguing 'extraordinary and compelling reasons' warrant a reduction in the term of imprisonment"); *Elias*, 984 F.3d at 520-21 (because movant "did not provide any records in her motion to support that she had hypertension[,] [t]he district court could have denied [the] motion for compassionate release on th[at] basis"); *United States v. Tomes*, 990 F.3d 500, 504 (6th Cir. 2021) (explaining that, although the defendant said in his compassionate release motion that he has chronic asthma (which increases the risk of serious illness from COVID-19), the district court could have denied the motion because he did not provide any records in his motion to support that he has chronic asthma); *United States v. Williams*, No. 1:17-cr-103, 2020 U.S. Dist. LEXIS 106292, at *9, 2020 WL 3256365, at *4 (S.D. Ohio June 16, 2020) (noting that, "even if the Court were inclined to grant [the defendant's] motion, he [still] failed to supply appropriate documentation establishing the medical conditions at issue or the fact that his mother and grandmother are the only people available to care for [his] children"); *United States v. Carr*, No. 5:19-cr-00511, 2021 U.S. Dist. LEXIS 103710, at *3–5, 2021 WL 2227401, at *2 (N.D. Ohio June 2, 2021) (finding that the defendant's assertion that his wife's "serious illnesses" prevented her from caring for their minor child did not warrant compassionate release because the defendant's evidence, including notes

9

from three of his wife's doctors, was "insufficient to show that his wife is incapacitated"). Here, although Jackson attached several documents to his Motion, none of those documents provide evidentiary support for any of his asserted medical ailments, including high blood pressure, severe obesity, adverse reactions to the COVID-19 vaccination, or his status as a former smoker. (*See* Doc. No. 217 at PageID 845–49.) And, although Jackson attached one document in support of his asserted family circumstances, the document is insufficient evidentiary support for the requested relief. (*See* Doc. No. 217-1 at PageID 858.) For example, Jackson did not provide any documentation establishing that he is the only person available to care for his children. The Government even pointed out the lack of supporting documents in its Response, yet Jackson still did not provide any medical records or other evidentiary support to the Court. This is another basis for denying the Motion.

Regarding the second requirement, given that Jackson (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111. Even if Jackson had provided the Court with sufficient evidentiary support for his asserted medical ailments and family circumstances, and the Court decided that Jackson demonstrated an extraordinary and compelling reason for reducing the term of imprisonment,[4] the Court separately finds that Jackson's requested relief should be denied at the third step in the analysis: consideration of any applicable Section 3553(a) factors and determination of whether, in the Court's discretion, the reduction is warranted in whole or in part under the particular circumstances of this case. *Elias*, 984 F.3d at 519; *Jones*, 980 F.3d at 1108;

---

[4] The Court emphasizes it has not actually found that any circumstance (separately or combined) alleged by Jackson qualifies as an "extraordinary and compelling reason[] [that] warrant[s] a reduction" of his sentence. 18 U.S.C § 3582(c)(1)(A)(i). As shown herein, the Court need not actually conduct that analysis to decide the Motion. *See, e.g.*, *Jones*, 980 F.3d at 1108 (affirming district court's decision, which had "assumed for the sake of argument that extraordinary and compelling reasons existed" to reduce the defendant's term of imprisonment, proceeded to weigh several § 3553(a) factors, and then denied the motion for compassionate release).

18 U.S.C. § 3582(c)(1)(A)(i); *see also Ruffin*, 978 F.3d at 1005 ("[e]ven if [the first two requirements] are met, … a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted).

Regarding the third requirement, the Court has considered the parties' arguments and the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes the Court's consideration of Jackson's history and characteristics, such as his asserted behavior in prison, rehabilitation efforts, and educational or vocational training while incarcerated. *See* 18 U.S.C. § 3553(a)(1). Jackson also accepted responsibility for his actions. And, the Court acknowledges the challenging conditions at McDowell FCI during the COVID-19 pandemic and Jackson's asserted health issues. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(D).

Yet, the "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1); *see also Wright*, 991 F.3d at 719 ("district courts have wide latitude to deny compassionate release based on the seriousness of the underlying offense," such that "[s]o long as the district court considers the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, it is not an abuse of discretion to deny compassionate release based on the seriousness of the offense") (internal quotation marks omitted). The offense for which Jackson is currently incarcerated was serious, involving multiple home invasions/armed robberies and carjackings. Although Jackson never actively participated in the robberies (Doc. No. 205 at PageID 741), he voluntarily joined this conspiracy knowing that its objective was to commit armed home invasions/robberies and carjackings and wrongfully obtained personal property from various victims through the wrongful use of actual and threatened force, violence, and fear of injury—both immediate and future. (Doc. No. 68 at PageID 196.) On at least one instance, Jackson's co-conspirators held a victim at gun point and proceeded to carjack the victim's vehicle. (*Id.*)

11

Participation in calculated crimes of this nature poses a dangerous risk to the safety of the community.

Additionally, Jackson's criminal history is extensive, spans nearly two decades, and includes prior convictions involving crimes of burglary, theft, fraud, aiding and abetting fraud, and multiple counts of identity fraud. (PSI ¶¶ 94–109.) Further, Jackson previously committed fraud while on supervised release for his conviction of aiding and abetting fraud. (*Id.* ¶ 104.) Jackson's criminal history, in addition to the crime for which he is currently incarcerated, suggests that he is a repeat offender of crimes requiring greater sophistication and preparation. All of this greatly concerns the Court. *See* 18 U.S.C. §3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(6). The Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant do not favor early release. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

Having considered the factors set forth in Section 3553(a) to the extent that they are applicable, the Court finds that the requested reduction in the term of imprisonment is not warranted. Thus, even if the first two requirements are met, the Court finds that consideration of the applicable Section 3553(a) factors do not support granting the reduction. *Ruffin*, 978 F.3d at 1008 (the Sixth Circuit has "repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief"); *Jones*, 980 F.3d at 1102 (affirming decision to deny motion for compassionate release where "the district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting

compassionate release"); *United States v. Harvey*, 996 F.3d 310, 312-15 (6th Cir. 2021); *Wright*, 991 F.3d at 720.

### III. CONCLUSION

Although the Court recognizes Jackson's asserted medical ailments, commends his apparent efforts to better himself while incarcerated (*see, e.g.*, Doc. No. 217), and is sympathetic toward his alleged family circumstances and fear of contracting COVID-19, the Court denies the Motion for multiple, independent reasons, including that the circumstances do not warrant a reduction in the term of imprisonment pursuant to Section 3582(c)(1)(A).  For the reasons stated above, the Court **DENIES** the Motion for Compassionate Release (Doc. No. 217).[5]

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, April 3, 2023.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[5] The Court acknowledges the valuable contribution and assistance of judicial intern Brooke Hewlett in drafting this order.